Argued July 24, affirmed August 27, petition for rehearing denied September 26, petition for review denied November 13, 1973

# SOUTHERN PACIFIC TRANSPORTATION COMPANY (No. 379-289), *Appellant, v.* SABIN, *Respondent.*

513 P2d 500

*James H. Clarke,* Portland, argued the cause for appellant. With him on the briefs were Dezendorf, Spears, Lubersky & Campbell, Oglesby H. Young and John Wiley Gould, Portland.

*Al J. Laue,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and THORNTON, Judges.

LANGTRY, J.

Plaintiff's railroad tracks intersect with Harmony Road in Clackamas County near the City of Milwaukie. Approximately 30 feet north of the grade crossing, Railroad Avenue and Linwood Avenue intersect with Harmony Road. The grade crossing is protected by an electric "wig-wag" signal. Switching operations on a siding near the grade crossing cause the "wig-wag" to be activated twice a day for periods of up to 45 minutes when no train is about to use the crossing. Motorists familiar with this pattern ignore the "wig-wag" and proceed across the tracks. Plaintiff operates approximately 28 freight trains daily and occasionally a passenger train over the crossing.

Pursuant to ORS 763.170 seven freeholders filed a complaint with the Public Utility Commissioner, alleging that the grade crossing was dangerous. The complaint was served upon plaintiff and various public bodies. Plaintiff by its answer denied that the crossing

was dangerous, but alleged that it was willing to share in the cost of installing and maintaining flashing lights, gongs and gates at the crossing. Clackamas County in its answer denied the crossing was dangerous, but alleged that gates, flashing lights and gongs should be installed along with an interconnected traffic signal at the road intersection to increase the safety of the crossing.

A hearing was held for all interested parties to produce evidence for the commissioner's consideration. At the hearing the plaintiff objected to evidence and testimony relating to the necessity of installing the traffic signals on the ground that protective devices off the plaintiff's right of way were beyond the scope of the hearing. Witnesses for the plaintiff testified that in their opinion installation of stop signs would be adequate to protect the intersection from any hazards that would result from the installation of the crossing gates.

A second issue at the hearing revolved around an interim solution to the problem of overactivation of the present "wig-wag" warning signal caused by the switching operations. The testimony showed that the protective gates, lights and gongs would take up to nine months to install. A "predictor" unit that would deactivate the "wig-wag" signal during the switching operations could be installed with 60 days' notice.

After the conclusion of the hearing the commissioner issued an order finding that the crossing was dangerous and ordering (1) that gates, flashing lights and gongs be installed by plaintiff, with Clackamas County to pay half the cost; (2) that Clackamas County install a traffic signal at the road intersection with the plaintiff to pay half the cost; (3) that plaintiff install

at its own expense a "predictor" unit within 60 days. Plaintiff initiated proceedings in circuit court challenging the second and third portions of the order and now appeals from an order affirming the commissioner's position.

The order requires the county to install the traffic signals and the plaintiff to pay half the cost. Plaintiff contends that the order goes beyond the commissioner's authority because ORS 763.170① gives no authority for the commissioner to order the county to do anything it does not consent to do. The second part of the plaintiff's argument is that the commissioner also would have gone beyond his power if he had ordered the plaintiff to install the traffic signals and the county to pay half the cost because the traffic signals would not have been located on the plaintiff's property, and because the plaintiff could not have been permitted to install traffic signals.

■ ORS 763.170 is silent on the question of whether

---

① ORS 763.170 (2) and (3) provide:

"(2) If upon such hearing it appears to the satisfaction of the commissioner that the crossing complained of is unsafe and dangerous to human life, he may, subject to the provisions of subsection (3) of this section, order that said crossing be closed or order and direct the railroad to install and maintain proper signals, warnings, gates or other devices to warn and protect the public, and establish a date by which such signals, warnings, gates or other devises [sic] are to be installed and placed into operation.

"(3) The commissioner shall apportion the cost and expense of the installation thereof between the public and the railroad in such manner as shall be just and equitable, taking into consideration the relative benefits received under the circumstances surrounding each case, and shall suspend the effective date of his said order until the public agency or agencies in interest, as determined by the commissioner, have consented to said apportionment and have agreed to comply therewith; provided, however, that in no case shall the commissioner allocate more than 50 percent of said cost to the public."

the commissioner can order the plaintiff to install or maintain proper signals, warnings, gates or other devices on property outside of plaintiff's right of way. The words "right of way" or words of similar import simply are not in the statute. The use of the word "proper," coupled with the fact that here the commissioner found that "proper" devices included traffic signals, refutes the argument that the commissioner has no power to order off-right-of-way warning devices. The restrictive interpretation of the statute urged by plaintiff would make the commissioner powerless to correct dangerous situations where warning devices would be ineffective unless placed off the right of way. Further, it would require us to read into the statute wording about off-right-of-way devices that is not there.

The plaintiff argues that plaintiff cannot legally install traffic signals because the county has the exclusive power to do so.

ORS 483.044 (1) provides:

"Subject to the authority vested in the State Highway Commission, local authorities in their respective jurisdictions shall erect and maintain appropriate signs designating business and residence districts, and railway or interurban railway grade crossings; such other signs, markings and traffic control signals as are deemed necessary to direct and regulate traffic and to carry out the provisions of this chapter; and such additional signs as may be appropriate to give notice of local parking and other special regulations."

Plaintiff interprets this statute to mean that the county has the exclusive power to erect traffic control signals.

ORS 483.040 (2) provides:

"The commission is authorized to determine the

character or type of traffic control signals to be used, and to place or erect them upon state highways, at places where the commission deems necessary for the safe and expeditious control of traffic. So far as practicable, all such traffic control signals shall be uniform as to type and location. No traffic control signals shall be erected or maintained upon any state highway by any authority other than the commission, except with its written approval."

The traffic operations engineer of the State Highway Division testified at the hearing that traffic signals were necessary at the crossing. From the record it thus appears that either the plaintiff or the county could have obtained, or can obtain, written approval to install the traffic signals if ordered to do so by the commissioner.

ORS 483.016 (1) provides:

"As used in this chapter, except where the context otherwise requires:

"(1) 'Official traffic signs and signals' means all signs, signals, markings and devices not inconsistent with this chapter, placed or erected by authority of a public body or official having jurisdiction, for the purpose of guiding, directing, warning or regulating traffic."

ORS 483.138 (1) and (4) provide:

"(1) No person shall place, maintain or display upon or in view of any street or highway, any unofficial sign, signal or device which purports to be or is an imitation of or resembles an official traffic sign or signal, or which bears the words 'Stop,' 'Go Slow,' 'Caution,' 'Danger,' 'Warning' or similar words, or which attempts to direct the movement of traffic, or which hides from view or interferes with the effectiveness of any official traffic sign or signal.

"(4) Every prohibited sign, signal or device is hereby declared to be a public nuisance, and the authority having jurisdiction over the highway may remove it, or cause it to be removed, without notice."

■ The plaintiff's argument must be considered in light of the above statutes. If the traffic signals were installed by plaintiff and if they were not "official" traffic signals, plaintiff would be in violation of ORS 483.138. However, if the commissioner is a public "official having jurisdiction" then the traffic signals installed under his authority would be official and the plaintiff could legally install them. Under ORS 763.170 the commissioner has jurisdiction to order proper warning signals. We conclude that signs and signals erected under the authority of the commissioner are "official" and not in violation of ORS 483.138.

■ It is within the power of the commissioner under ORS 763.170 to order the plaintiff to install the traffic signals because they were found to be "proper * * * devices to warn and protect the public" and because the plaintiff with written approval of the State Highway Commission, and under order of the commissioner, can install the signals. Instead the commissioner ordered the county to install the signals and the plaintiff to pay half the cost. The county while not bound by the order consented to it. The question remains whether the commissioner is authorized to order the plaintiff to pay half the cost of the installation instead of ordering the plaintiff to install the signals and the county to pay half.

■ We find that the commissioner has the power to do what he did. Ordering plaintiff to pay half the cost is the equivalent of ordering the plaintiff to "install" the signals.

The challenge to the third part of the order is based on the statement in the order that plaintiff is ordered to bear the full cost of the "predictor" unit because the crossing at present is in violation of Oregon Administrative Rules, ch 860, § 42-090 (OAR 860-42-090).[2] Plaintiff contends that the reason cited for assessing full cost to the plaintiff indicates the commissioner failed to follow the statutory requirement that he

> "* * * apportion the cost and expense * * * in such manner as shall be just and equitable, taking into consideration the *relative benefits* received under the circumstances surrounding each case * * *." (Emphasis supplied.) ORS 763.170 (3).

■ Plaintiff's argument ignores the facts borne out in the record that the plaintiff should have installed such a device long ago, and that the error lay originally in the plaintiff's having failed to install the proper device when railroad spur track construction caused the problem. Installation of this device does benefit the plaintiff and not the county in its respective proprietary capacities and the commissioner's order was in compliance with the standards of the statute.

Affirmed.

---

[2] OAR 860-42-090 provides in part:

"* * * Prolonged signal operation, caused by standing or moving trains or cars or by opened switches within the signal limits of the track control circuits must be avoided whenever possible by use of appropriate relays and devices * * *."